805 F.2d 203
 42 Fair Empl.Prac.Cas. 744,
44 Fair Empl.Prac.Cas. 847,
42 Empl. Prac. Dec. P 36,776, 35 Ed. Law Rep. 994
 Rosie M. DANIELS; Teresa Chambers, Plaintiffs-Appellants,
v.
BOARD OF EDUCATION OF the RAVENNA CITY SCHOOL DISTRICT; Dr.
Robert Webb, individually and as a former member of the
Ravenna City School District Board of Education; Barbara
Ross, individually and as a member of the Board of
Education; Dale Fosnight, individually and as a member of
the Board of Education; James Nagella, individually and as
a member of the Board of Education; James DiPaola,
individually and as a member of the Board of Education,
Defendants-Appellees.
 No. 85-3934.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 18, 1986.
Decided Nov. 17, 1986.
As Amended on Denial of Rehearing Jan. 23, 1987.
 
 Dennis Haines, Ira J. Mirkin (argued), Green, Schiavoni, Murphy, Haines & Sgambati Co., LPA, Youngstown, Ohio, for plaintiffs-appellants.
 John E. Britton (argued), Means, Bichimer, Burkholder & Baker, Cleveland, Ohio, Dennis M. Whalen (argued), G. Frederick Compton, Jr., R. Brent Minney, Cuyahoga Falls, Ohio, for defendants-appellees.
 Before MILBURN and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiffs-appellants Rosie M. Daniels and Teresa Chambers Pledger[1] appeal from the district court's judgment in favor of defendants-appellees Ravenna Board of Education, each Board member individually, and Superintendent James Coll in this action alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., the Civil Rights Act of 1866, 42 U.S.C. Sec. 1981, and the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983. The principal issues presented are whether the district court erred in finding that plaintiffs had not established their claim of racial discrimination under the disparate treatment theory and whether the district court erred in declining to modify the final pretrial order to permit consideration of the evidence under the disparate impact theory. For the reasons that follow, we affirm.
 
 I.
 
 2
 Plaintiffs, both black women, were employed as teachers by the Ravenna Board of Education ("the Board") until June 1981 when their nontenured teaching contracts were not renewed as a result of their participation in an unauthorized teachers' strike. The Board also failed to renew the nontenured teaching contracts of sixty-eight other teachers who had participated in the strike. Seventeen of the teachers who were not renewed were rehired for the 1981-1982 school year. All of the teachers who were rehired are white. Plaintiffs and a third black teacher whose nontenured contract was not renewed applied for rehire but were denied. Out of sixty white teachers whose contracts were not renewed and who applied for rehire, forty-three were denied.
 
 
 3
 All applications for teaching positions for the 1981-1982 school year were reviewed by an administrative team. Superintendent Coll instructed each administrative team to "look for the best qualified person to come into the school system and help put the school system back together after the strike." Joint Appendix at 490-91. Superintendent Coll further instructed each administrative team that if they wanted to rehire any of the teachers who were not renewed, they should make a recommendation to that effect and state their reasons. Joint Appendix at 491. Plaintiffs were not recommended for rehire.
 
 
 4
 Plaintiff Pledger's former position as a fourth grade teacher at Tappan Elementary was assigned to Sue Dyett, a white female who had previously taught at Tappan Elementary. Martha Furey, the Elementary Coordinator, testified that she recommended hiring Sue Dyett rather than plaintiff for the following reasons:
 
 
 5
 Our goal at the time was to find the very best teachers that we could, and we were also trying to rebuild a fragmented school system, and it was important that we had people that worked together and bring the building together, and I did not get a recommendation from her building principal.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 [Dyett] was an outstanding teacher in the years that she had taught at Tappan, and she had gone back to school, she had a master's degree in education, so she met the criteria of being an excellent staff (sic), she also was the kind of person that would pull the building back together again, and she was strongly recommended by her building principal and I concurred with that recommendation.
 
 
 9
 Joint Appendix at 258-61.
 
 
 10
 Theodore Poole, the principal at Tappan Elementary, testified that he recommended hiring Sue Dyett rather than plaintiff after comparing "[t]heir expertise in the classroom, their ability to use various approaches in motivating children and their past records in attendance and their attitude toward ongoing professional, personal and professional growth and so forth." Joint Appendix at 269-70.
 
 
 11
 The Board filled other elementary positions for which plaintiffs were qualified but, with the exception of Betty Seymour, these teachers had not participated in the strike. Joint Appendix at 50-56, 339-40. According to Principal Poole, Betty Seymour was hired because "her experience was in a grade close to the one I was trying to fill. She had experience in second (sic), and I was filling the first." Joint Appendix at 270.
 
 
 12
 Plaintiff Daniels' former position as an EMR (Educable Mentally Retarded) teacher at Brown Junior High was initially filled by Johneita Durant, a black female. After Ms. Durant resigned, Artemis Flag, a black male, was offered the position but declined. Ultimately Leesa Widger, a white female who had not participated in the strike, was hired to fill the position.
 
 
 13
 Arthur Fesemyer, the Secondary Coordinator, testified that his recommendation of Ms. Widger was based on the recommendations of Dave Spencer, an elementary principal, and Ann Volio, Director of Special Education. Joint Appendix at 222-23. Director Volio testified that she reviewed Ms. Widger's qualifications and concluded that she would be an excellent teacher. Joint Appendix at 253-54. Norman Stikes, Principal at Brown Junior High, testified that, after reviewing the qualifications of each candidate, he recommended that Ms. Widger be hired rather than plaintiff. Joint Appendix at 239-40. The Board filled other EMR positions for the 1981-1982 school year but the teachers hired had not participated in the strike. Joint Appendix at 50-56, 339-40.[2]
 
 
 14
 Following a bench trial, the district court found that the "failure to hire either Daniels or Pledger for the 1981-1982 school year was not motivated by discriminatory intent." The district court refused to modify the final pretrial order to permit consideration of the evidence under the disparate impact theory. Finally, the district court found that the individual members of the Board were not named as parties by either plaintiff in the charges filed with the Equal Employment Opportunity Commission ("EEOC").
 
 II. DISPARATE TREATMENT
 A. Allocation of the Burdens of Proof
 
 15
 Title VII makes it an unlawful employment practice to discriminate against an individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. Sec. 20OOe-2(a). A Title VII violation may be established under the theory of disparate treatment. " 'Disparate treatment' ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin." Teamsters v. United States, 431 U.S. 324, 335-36 n. 15, 97 S.Ct. 1843, 1854-55 n. 15, 52 L.Ed.2d 396 (1977). To prevail under the disparate treatment theory, a plaintiff must show that he has been the victim of intentional discrimination. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983); Teamsters, 431 U.S. at 335 n. 15, 97 S.Ct. at 1854-55 n. 15.
 
 
 16
 The plaintiff in a Title VII disparate treatment case bears the ultimate burden of persuasion on the issue of discriminatory intent. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). However, the burden of production shifts. The plaintiff bears the initial burden of establishing a prima facie case of discrimination. Burdine, 450 U.S. at 253-54, 101 S.Ct. at 1093-94; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This initial burden of production is "not onerous," Burdine, 450 U.S. at 253, 101 S.Ct. at 1093, and is satisfied upon a showing of "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.' " Furnco Construction Corp. v. Waters, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (quoting Teamsters, 431 U.S. at 358, 97 S.Ct. at 1866).
 
 
 17
 Once the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093 (quoting McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824). The burden of articulating a legitimate, nondiscriminatory reason for the adverse action does not require the defendant to prove the absence of a discriminatory motive in order to rebut the plaintiff's prima facie case. Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978) (per curiam). Moreover, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Burdine, 450 U.S. at 254-55, 101 S.Ct. at 1094-95 (citation and footnote omitted).
 
 
 18
 If the defendant successfully presents a legitimate, nondiscriminatory reason for its action, the plaintiff must prove that the reasons proffered by the defendant were a mere pretext for discrimination. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095; McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. at 1825. Plaintiff's burden of showing pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. Pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant's] proffered explanation is unworthy of credence." Id.
 
 
 19
 In addition to Title VII, 42 U.S.C. Sec. 1981 and 42 U.S.C. Sec. 1983 afford remedies against discrimination in employment on the basis of race. See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 459-60, 95 S.Ct. 1716, 1719-20, 44 L.Ed.2d 295 (1975) (section 1981); Poolaw v. City of Anadarko, 660 F.2d 459, 462 (10th Cir.1981) (section 1983), cert. denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985). The protection afforded by section 1983 is applicable only where the discriminatory employment practices involve state action. Poolaw, 660 F.2d at 462. Like disparate treatment under Title VII, sections 1981 and 1983 require proof of purposeful discrimination. See Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 378 (6th Cir.1984) (section 1981), cert. denied, --- U.S. ----, 106 S.Ct. 3298, 92 L.Ed.2d 712 (1986); Poolaw, 660 F.2d at 462 (section 1983). Thus, the order and allocation of proof, applicable in a disparate treatment case under Title VII, may be utilized in adjudicating race discrimination claims arising under sections 1981 and 1983. See Jackson, 743 F.2d at 378.
 
 B. Prima Facie Case
 
 20
 In McDonnell Douglas, the Court set forth a model for establishing a prima facie case of discrimination. The model requires the plaintiff to prove four elements: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824. Although the district court did not expressly find that plaintiffs had presented a prima facie case, the district court did find that plaintiffs were black, that plaintiffs reapplied after their contracts were not renewed, that plaintiffs were qualified for the positions for which they applied, and that plaintiffs were rejected and other persons were hired to fill the positions.
 
 
 21
 To establish a prima facie case, plaintiffs were not required to produce any proof of the employer's intent. Parker v. Baltimore and Ohio Railroad Co., 652 F.2d 1012, 1016 (D.C.Cir.1981); Daye v. Harris, 655 F.2d 258, 262-63 (D.C.Cir.1981); see also Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir.1985). The district court, however, stated in its Findings of Fact and Conclusions of Law that plaintiffs, in order to establish a prima facie case, were required "to prove a discriminatory motive or intent on the part of the defendant." The district court's apparent error does not require reversal.
 
 
 22
 Where, as here, the district court has decided the ultimate factual issue, whether the plaintiff was the victim of intentional discrimination, the district court's failure to apply the correct legal standard in determining whether the plaintiff presented a prima facie case is no longer relevant. See Jasany v. United States Postal Service, 755 F.2d 1244, 1253 (6th Cir.1985); cf. Aikens, 460 U.S. at 715, 103 S.Ct. at 1481-82 ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."); Furnco, 438 U.S. at 577, 98 S.Ct. at 2949 (the allocation of evidentiary burdens under McDonnell Douglas is "merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.").
 
 C. Legitimate, Nondiscriminatory Reasons
 
 23
 The reasons proffered by the defendant must be articulated with sufficient clarity and specificity to provide the plaintiff "a full and fair opportunity to demonstrate pretext." Burdine, 450 U.S. at 255-56, 101 S.Ct. at 1094-95; see also Grano v. Department of Development, City of Columbus, 699 F.2d 836, 837 (6th Cir.1983) (per curiam); Rowe v. Cleveland Pneumatic Co., 690 F.2d 88, 96 (6th Cir.1982) (per curiam). "[T]he legitimacy of the articulated reason for the employment decision is subject to particularly close scrutiny where the evaluation is subjective and the evaluators themselves are not members of the protected minority." Grano, 699 F.2d at 837. However, "the mere fact that subjective criteria are involved in the reason articulated by an employer does not prevent according it sufficient rebuttal weight to dispel the inference of discrimination raised by the prima facie case." Page v. Bolger, 645 F.2d 227, 230 (4th Cir.) (en banc), cert. denied, 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981); see also McDonnell Douglas, 411 U.S. at 803, 93 S.Ct. at 1824-25; Grano, 699 F.2d at 837.
 
 
 24
 Plaintiffs were not rehired because the administrative teams, which Superintendent Coll had directed to "look for the best qualified person" who could "help to put the system back together following the strike," did not recommend plaintiffs for rehire. The district court characterized Superintendent Coll's directive as requiring the administrative teams "to look for the best qualified persons who would comprise a congenial staff." Superintendent Coll's testimony, however, evinces that the administrative teams were not directed simply to consider congeniality, but to review the applicants who were not renewed in light of the resentment and open hostility that had developed between striking and nonstriking teachers after the striking teachers returned to work. Joint Appendix at 156, 165.
 
 
 25
 In Rowe, this court held that the mere fact that the plaintiff had not been recommended for reemployment by the foreman who had been delegated the responsibility for rehiring former employees was not a sufficient reason to rebut the plaintiff's prima facie case. The court reasoned:
 
 
 26
 [The employer's] stated reason ... explains only that persons to whom the employment decision was delegated did not want [the plaintiff]. [The plaintiff's] former foreman may well have made his decision not to have [the plaintiff] rehired because of his belief that the plaintiff's work record was unsatisfactory. On the other hand, he may have made that decision because he personally disliked black people or for any number of reasons.... As evidenced by the record, the subjective evaluation procedure utilized by [the employer] did not require the foreman to offer a reason for their rejection of an applicant
 
 
 27
 ....
 
 
 28
 690 F.2d at 96-97.
 
 
 29
 Unlike the situation in Rowe, the administrative teams, to whom the primary responsibility for hiring teachers was delegated, were instructed to consider the applicants' qualifications and the dissension that could result from rehiring teachers who had participated in the strike. Moreover, members of the administrative teams testified that they did not discriminate against plaintiffs on the basis of race, but recommended rehiring those teachers who best satisfied the criteria established by Superintendent Coll. Although the reasons proffered by defendants involve subjective factors, they were clearly sufficient to dispel the inference of discrimination and to afford plaintiffs a "full and fair opportunity" to show pretext. See Page, 645 F.2d at 228, 230; see also Henry v. Lennox Industries, Inc., 768 F.2d 746, 749-51 (6th Cir.1985).
 
 D. Pretext
 
 30
 Once the defendant produces evidence that the plaintiff was rejected for a legitimate, nondiscriminatory reason, "the presumption of discrimination 'drops from the case,' ... and the District Court is in a position to decide ... whether the particular employment decision at issue was made on the basis of race." Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984) (quoting Burdine, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10); see also Aikens, 460 U.S. at 716, 103 S.Ct. at 1482. The district court's finding on the issue of discrimination "is subject to review under the clearly erroneous standard of Rule 52(a), Fed.R.Civ.P..... Findings of the district court are not clearly erroneous unless, upon review of the entire record, the court is left with a definite and firm conviction that a mistake has been committed." Jackson, 743 F.2d at 374 (citations omitted). Moreover, findings which "are based on determinations regarding the credibility of witnesses" are entitled to even greater deference. Henry, 768 F.2d at 750 (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985)).
 
 
 31
 The district court did not clearly err in finding that defendants' asserted reasons for not rehiring plaintiffs were not a pretext for discrimination. The position previously held by plaintiff Pledger at Tappan Elementary was filled by Sue Dyett, a former teacher at Tappan who held a Master's Degree in Education and had not participated in the strike. Plaintiff Pledger had not pursued graduate study. See Clark v. Huntsville City Board of Education, 717 F.2d 525, 527 (11th Cir.1983). Betty Seymour, a teacher who was not renewed, was also hired to fill a position at Tappan Elementary. However, her prior experience rendered her more qualified than plaintiff for the position.
 
 
 32
 The position previously held by plaintiff Daniels was filled by Leesa Widger, who was as qualified for the position as plaintiff and had not participated in the strike. Title VII does not obligate an employer to hire the minority applicant whenever that person's qualifications are equal to those of the non-minority applicant. Burdine, 450 U.S. at 258-59, 101 S.Ct. at 1096-97. Further, plaintiff Daniels' claim of racial discrimination is particularly unpersuasive because her former position was initially filled by another black woman and, upon her resignation, defendants attempted to hire a black male. See Hudson v. International Business Machines Corp., 620 F.2d 351, 354 (2d Cir.), cert. denied, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980).
 
 III. DISPARATE IMPACT
 
 33
 Plaintiffs stipulated in the final pretrial order that their action was "based upon alleged disparate treatment of plaintiffs by defendant." Joint Appendix at 434. Plaintiffs first raised the disparate impact theory in their proposed findings of fact and conclusions of law submitted after the trial. The district court did not consider plaintiffs' claims under the disparate impact theory.
 
 
 34
 Rule 16(e) of the Federal Rules of Civil Procedure provides that the final pretrial order "shall control the subsequent course of the litigation" unless modified by the district court to prevent manifest injustice. The decision whether to modify the final pretrial order is within the sound discretion of the district court and will be set aside only if the district court abused that discretion. Allen v. United States Steel Corp., 665 F.2d 689, 696 (5th Cir.1982); G & R Corp. v. American Security & Trust Co., 523 F.2d 1164, 1173 (D.C.Cir.1975). We do not perceive and plaintiffs have not identified any reason to disturb the district court's decision.
 
 IV.
 
 35
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.[3]
 
 
 36
 BOGGS, J., concurs.
 
 
 37
 EDWARDS, J., concurs only in the result.
 
 
 
 [1]
 Apparently, plaintiff was married subsequent to the filing of this action
 
 
 [2]
 The Board filled other elementary positions by rehiring teachers who had not been renewed, but there is no affirmative evidence that plaintiffs were qualified for these positions
 
 
 [3]
 Because we affirm the district court's finding that plaintiffs were not the victims of discrimination, we need not consider whether the individual defendants should have been dismissed from the action because they were not named in the EEOC charges