829 F.2d 1126
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sadie SMITH, Plaintiff-Appellant,
v.
CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY d/b/a/
Erlanger Hospital; Betty Severyn; Geraldine Kelly;
Martha Manning; Jim Allen; Dr. Walter
Puckett; and Leonard Fant,
Defendants-Appellants.
 No. 86-5639
 United States Court of Appeals, Sixth Circuit.
 September 24, 1987.
 
 Before BOYCE F. MARTIN, NATHANIEL R. JONES, and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Sadie Smith appeals from the district court's order granting summary judgment in favor of all defendants in this employment discrimination action. We affirm.
 
 
 2
 The plaintiff in this action is a black female, formerly employed as a registered nurse by the Chattanooga-Hamilton County Hospital ('Hospital'). During the course of her employment, Smith sought a promotion to enterstomal therapy nurse. In order to achieve such a promotion, an applicant first had to be selected to attend the school of enterstomal therapy. The selection process included applicant screening interviews that all applicants were required to attend. Smith, however, refused to appear at her scheduled interview time. Consequently, another applicant was selected to attend the school and receive the promotion.
 
 
 3
 During late 1981, Hospital officials began receiving complaints about Smith's job performance. Smith refused to meet with Hospital officials to discuss these complaints. During the course of her investigation of these complaints, Betty Severyn, the Vice-President in charge of nursing, met with several employees, many of whom indicated that they were disturbed by Smith's behavior and felt that they could no longer work with her. Smith was subsequently given time off with pay while Hospital officials decided what should be done with her.
 
 
 4
 On February 13, 1982, the Personnel Committee met to discuss what action should be taken regarding Smith's employment. Smith attended the meeting. According to witnesses at the meeting, Smith behaved strangely. As a result of Smith's actions at this meeting, Severyn became convinced that Smith was unable to deal with stressful situations and should not be allowed to return to her nursing duties.
 
 
 5
 On February 18, 1982, Severyn met with Smith and told her that it was her (Severyn's) opinion that she (Smith) could no longer function as a registered nurse at the hospital. Smith was referred to Dr. Shawn Gazaleh, the Hospital's health officer, to discuss her problems. Smith met with Dr. Gazaleh on February 18. After the meeting, Dr. Gazaleh drafted a memo to Severyn in which he advised that Smith not be allowed to return to work. Dr. Gazaleh also arranged for Smith to meet with Dr. Robert Spaulding, a psychiatrist. After this appointment, Dr. Spaulding submitted a report to Dr. Gazaleh in which he recommended that Smith not be allowed to return to work because she was suffering from a paranoid personality disorder. Smith never returned to work.
 
 
 6
 Smith commenced this action on August 25, 1982, against the Hospital and five of its employees, Betty Severyn, Martha Manning, Geraldine Kelly, Leonard Fant and Jim Allen. Smith also sued Dr. Robert T. Spaulding, Dr. Shawn Gazaleh, and Dr. Walter Puckett. None of the doctors were employed by or serving as an agent of the Hospital. The complaint contained allegations of violations of Title VII, Secs. 1981, 1983, and 1985, as well as allegations of malpractice against Dr. Spaulding and allegations of libel and slander against various defendants. The claims brought under the various federal statutes alleged that Smith had been denied a promotion and later discharged due to her race. She also claimed that various of the defendants had conspired to deprive her of her constitutional rights.
 
 
 7
 Following a pretrial conference, Smith amended her complaint and proceeded under three specific legal theories: (1) that all defendants had discriminated against her and retaliated against her; (2) that the hospital had racially discriminated against her; and (3) that Dr. Spaulding had commited medical malpractice.[1]
 
 
 8
 In June 1983, Smith's attorneys withdrew from the case, and Smith proceeded pro se. The district court subsequently dismissed Smith's Sec. 1985 claim, and ruled that her Sec. 1981 and Sec. 1983 claims should be severed and reserved for trial until after the Title VII claim was tried. The district court further ruled that the Title VII claim would initially be heard only against the Hospital. Prior to trial on the Title VII claim, motions for summary judgment filed on behalf of defendants Spaulding and Gazaleh were sustained. Thereafter the hospital filed a motion for summary judgment on Smith's Title VII claim. The motion was granted after the court found that Smith had not suffered disparate treatment due to her race. The remaining defendants, Severyn, Manning, Kelly, Fant, Allen and Puckett then moved for summary judgment on all claims, and their motions were also granted. The court also subsequently granted defendants' motions for summary judgment on the Secs. 1981 and 1983 claims.
 
 
 9
 An appellate court applies the same test as used by the district court in reviewing a motion for summary judgment. Hand v. Central Transport, Inc., 779 F.2d 8, 10 (6th Cir. 1985) (per curiam). Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate. Celotex Corp. v. Catrett, 106 S. Ct. 2548 (1986).
 
 
 10
 Smith's complaint alleged two separate claims of employment discrimination: first, that she was improperly denied the position of enterstomal nurse; second, that she was discharged because of her race. The propriety of the district court's disposition of each of these allegations will be examined separately.
 
 
 11
 In cases alleging racially discriminatory treatment, courts apply the basic allocation of burdens of proof set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Those decisions provide that a Title VII plaintiff must first prove by a preponderance of the evidence, a prima facie case of discrimination. If such a case is established, the defendant must articulate a legitimate, nondiscriminatory reason for the action taken. If the defendant carries this burden of production, the plaintiff must then prove by a preponderance of the evidence that the articulated reason was pretextual, either by showing that a discriminatory reason was the more likely motivation, or by showing that the articulated reason is unworthy of belief. Burdine, 450 U.S. at 256. The burden of persuasion at all stages of this process remains with the plaintiff. Id. at 253. The essential factual inquiry in any discrimination case always remains '[whether] the defendant intentionally discriminated against the plaintiff.' United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983) (quoting Burdine, 450 U.S. at 253).
 
 
 12
 In this instance, Smith could have established a prima facie case of discrimination by proving: (1) that she is black; (2) that she applied and was qualified for the open position; (3) that she was rejected; and (4) that, after her rejection, the employer continued seeking applications from persons of plaintiff's qualifications. See McDonnell Douglas, 411 U.S. at 802.
 
 
 13
 Smith clearly carried her burden at the first stage and presented sufficient proof to establish a prima facie case of discrimination. The burden then fell on the Hospital to advance a legitimate nondiscriminatory reason for not promoting Smith. The Hospital successfully met this burden by stating that Smith had not been selected because she had neglected to appear for the requisite interview.
 
 
 14
 At this point, the burden fell on Smith to prove by a preponderance of the evidence that this reason was merely a pretext for discrimination. Smith completely failed to produce any evidence rebutting the legitimacy of the Hospital's reason for her nonselection. Thus, there were no genuine issues of material fact, and when the Hospital moved for summary judgment, the district court was obliged to grant the motion. Disposition under Rule 56 was appropriate under the circumstances.
 
 
 15
 Summary judgment was also properly granted on Smith's dismissal claim. As with the promotion claim, the key issue before the court was whether the reason advanced by the Hospital for dismissing Smith was legitimate. The Hospital had stated that Smith was dismissed because she was suffering from psychological problems and could no longer perform her job. The Hospital introduced evidence supporting this. Smith therefore had to prove that this reason was not legitimate. She failed to do this. She presented no convincing evidence that she was not dismissed due to illness. Consequently, the motion for summary judgment was properly granted.
 
 
 16
 Once the court determined that Smith had not been discriminated against under Title VII, it had to reach the same conclusion with regard to her Sec. 1981 and Sec. 1983 claims. Sections 1981 and 1983, like Title VII, prohibit discriminatory employment practices. Disparate treatment claims brought under any of these statutes require proof of purposeful discrimination. The burdens and standards of proof are identical. See Daniels v. Board of Educ., 805 F.2d 203, 207 (6th Cir. 1986). Thus, if a plaintiff does not have enough evidence to succeed with a claim of discrimination under Title VII, she also cannot succeed under either Sec. 1981 or Sec. 1983. Thus, entry of summary judgment on the Sec. 1981 and Sec. 1983 claims was proper as to all defendants.
 
 
 17
 Finally, dismissal of the Sec. 1985 claim was also proper. Smith alleged that the defendants had conspired to deprive her of her constitutional rights by dismissing her for discriminatory reasons. Smith presented no evidence of discrimination on the part of any of the defendants. Since her underlying claim of discrimination failed for lack of proof, her conspiracy claim also must fail.
 
 
 18
 Accordingly, the judgment of the district court is AFFIRMED.
 
 WELLFORD, Circuit Judge, concurring:
 
 19
 I concur with the result reached and with most of the reasoning set forth in support of the court's disposition. I write separately only to express my doubt that Smith made out a prima facie case in view of her mental condition and her manifest behavioral problems in respect to serving as a registered nurse. I would conclude that she failed to demonstrate that she was qualified for the promotion sought at the pertinent time.
 
 
 
 [1]
 The district court declined to exercise pendent jurisdiction over this claim