IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

March 24, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | |
|---|---|
| GARY LYNN MACK, | ) C/A NO. 03A01-9806-CV-00215 |
| | ) |
| Plaintiff-Appellant, | ) MORGAN CIRCUIT |
| | ) |
| v. | ) RUSSELL E. SIMMONS, JR., |
| | ) JUDGE |
| CHARLIE JONES, et al., | ) |
| | ) AFFIRMED AND |
| Defendants-Appellees. | ) REMANDED |

GARY LYNN MACK, *pro se.*

PAUL SUMMERS, Attorney General and Reporter, MICHAEL E. MOORE, Solicitor General, and ABIGAIL TURNER, Assistant Attorney General, Nashville, for Appellees Jones, Armes, Newberry & Elmore.

**O P I N I O N**

Franks, J.

In this action, plaintiff a prisoner, named Charlie Jones, the warden of the Morgan County Regional Correction Facility, Rick Elmore, Regina Armes and Carey Newberry as defendants, alleging a violation of his civil rights under 42 U.S.C. §1983.

The complaint alleges that on January 9, 1996, plaintiff was involved in a fight with another inmate, Randy Hill, who was white, and on January 9, 1996, the disciplinary board of the Morgan County Regional Correctional Facility found him guilty of an infraction and placed him on maximum security status. He further alleges this action was racially discriminatory because he was disciplined and the white

inmate was not. He also avers that he was denied due process of law because the disciplinary board members denied him the right to call witnesses on his behalf.

The complaint states that Jones is the warden of the prison and Rick Elmore is identified as chairman, with more, and there is no identity of the involvement of any of the other parties. In a memorandum in support of defendants' motion to dismiss, defendants explain that Elmore, Newberry and Armes are members of the disciplinary board which found plaintiff guilty of an assault in a disciplinary proceeding. Responding to defendants' motion to dismiss pursuant to T.R.C.P. §12.02, the Trial Judge dismissed the complaint on the ground that plaintiff failed to state a claim upon which relief could be granted.

The Tennessee Supreme Court has "established that a complaint 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief'". *Fuerst v. Methodist Hosp. South*, 588 S.W.2d 847, 848 (Tenn. 1978), (*quoting Conley v. Gibson*, 355 U.S. 41-46, 78 S.Ct. 99, 102, 2 L.Ed. 80 (1957)). In making its determination, the court should construe the complaint liberally in favor of the plaintiff. *Id.* at 848-849. Complaints filed by *pro se* plaintiffs should be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). However, as one court has said, the court "need no argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. Kaye*, 956 F.Supp. 261, 263 (E.D.N.Y. 1996).

42 U.S.C. §1983 provides:

> Every person who, under color of any statute, ordinance, regulation custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

2

In order to establish a claim for liability under this statute, "a plaintiff must plead and prove . . . two elements: (1) that he has been deprived of a right 'secured by the Constitution and laws' of the United States; and (2) that the defendant deprived him of this right while acting under color of law." *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570, 576 (6th Cir. 1979). *Also see Dunn v. State of Tenn.*, 697 F.2d 121, 125 (6th Cir. 1982) *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

To state a §1983 claim, a plaintiff must set forth specific facts that establish such claim. "It is not enough for a complaint under §1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 4569, 465 (6th Cir. 1986).

A plaintiff must also allege personal involvement by the persons charged. Liability cannot be established under a *respondeat superior* theory. The mere right to control, without more, does not establish liability. *Monell v. Dept. Of Soc. Serv.*, 436 U.S. 658, 691, 694 n.58, 98 S.Ct. 2018, 2036-2037 (1978). "There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a §1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

The complaint in this case does not state a claim of racial discrimination in the disciplinary proceedings at the correctional facility. The plaintiff alleged that he was involved in a fight with another inmate, Randy Hill, who was white, and that he was found guilty of assault and placed on maximum security status, and that Randy Hill was found not guilty. Taking these facts as true, no claim of racial discrimination has been alleged.

A claim of racial discrimination under §1983 is a claim of "disparate treatment". *See Daniels v. Board of Educ. Of Ravenna City Sch.*, 805 F.2d 203, 207 (6th Cir. 1986). "To prevail under the disparate treatment theory, a plaintiff must show that he has been the victim of intentional discrimination." *Id.* at 206. To establish a *prima facie* case of disparate treatment, a plaintiff must at least plead facts "from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the act.'". *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949 (1978). Here there is no allegation of intentional discrimination. Plaintiff only established that he was disciplined and that the white inmate involved in the fight was not. He then concluded that this action was due to racial discrimination. However, the complaint must be based on more than conclusory allegations. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

The complaint does not state a claim of denial of due process of the disciplinary proceeding, because plaintiff did not have a liberty interest in his security status protected by the Constitution of the United States. Since plaintiff did not have a liberty interest, he could not establish the first element of a §1983 claim, "that he has been deprived of a right 'secured by the Constitution and laws' of the United States."

The leading case setting forth due process requirements in prison disciplinary proceedings is *Wolff v. Mcdonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). (A liberty interest must be involved).

In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Supreme Court held that there was no liberty interest created by the Constitution of the State of Massachusetts requiring a hearing before a prisoner was transferred to a different prison where the conditions were substantially less favorable. In that case, several inmates were transferred to a maximum security facility from a

4

medium security facility due to the suspicion that they were involved in nine arson fires at the medium security facility. In finding no liberty interest, the *Meachum* Court stated:

> . . . we cannot agree that any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause. . . . [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison. . . . The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.
>
> Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

*Id.* At 224-225.

Based on the foregoing, a transfer to a more severe prison facility would not be the type of "atypical and significant hardship" that would implicate the Due Process Clause.

This Court addressed this situation in *Compton v. Campbell*, No. 01A01-9710-CH-00539, 1998 LEXIS 259 (Tenn. App. 1998). We held that a reclassification to a medium custody facility from a minimum custody facility is not such a hardship and it is therefore not subject to due process protection. (*Quoting Sandin v. Conner*, 115 S.Ct. 2293 at 2300.)

Since there was no liberty interest involved in this case, plaintiff could not establish the first element of a §1983 claim.

We conclude, therefore, that the complaint fails to state a §1983 claim against any of the defendants and affirm the judgment of the Trial Court and remand with the cost of the appeal assessed to the appellant.

_____

_____

Herschel P. Franks, J.

CONCUR:

_____

Houston M. Goddard, P.J.

_____

Charles D. Susano, Jr., J.