**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0006n.06

**No. 16-3175**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jan 05, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TONI HORN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| CITY OF CLEVELAND, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: GRIFFIN, WHITE, and DONALD, Circuit Judges.

PER CURIAM. Toni Horn appeals the district court's grant of summary judgment to the City of Cleveland, her employer, on her failure-to-promote, sex-discrimination, and retaliation claims. We AFFIRM.

**I.**

Horn began employment with the Waste Collection and Disposal division of the City of Cleveland's Department of Public Works in March 1989, as a waste collector. At pertinent times, the Waste Collection division was headed by Commissioner Ronnie Owens and General Superintendent Anthony Ludwig. Working under Owens and Ludwig were nineteen managers consisting of five assistant superintendents, five foremen-I, and nine foremen, located at various collection and disposal stations. Horn worked at the Carr Center Station.

In July 1996, Horn was promoted to Foreman. Around December 2010, Horn was appointed Acting Foreman I at the Ridge Road station, where she trained foremen and oversaw

waste collectors and drivers. Horn also occasionally filled in for Assistant Superintendent Wayne Thornton at the Ridge Station.

While an Acting Foreman I, Horn was suspended for one day for neglect of duty based on an incident on December 5, 2011, when her crew left trash uncollected and she had them collect the trash after hours without alerting her supervisor.

On April 17, 2012, Horn resigned from the Acting Foreman I position in a letter to Commissioner Owens stating that she wanted to "go back and continue my position as a waste collection foreman." PID 596, 641.

Around June 2012, Horn unsuccessfully bid for three Foreman I positions and one Assistant Superintendent position. Four men were promoted to those positions. In November 2012, the Union filed a grievance on Horn's behalf asserting that the City violated the CBA by denying Horn's bids for promotion. This grievance eventually proceeded to binding arbitration in December 2014, as discussed below. In the interim, in late November 2012, Horn filed gender discrimination charges with the Equal Employment Opportunity Commission (EEOC) and Ohio Civil Rights Commission (OCRC).

## II.

Horn instituted this sex discrimination and retaliation action in September 2013, alleging that the City unjustifiably disciplined her and deprived her of promotions based on her sex, and retaliated against her by suspending her for filing grievances and EEOC and OCRC charges of sex discrimination. In addition, Horn alleges that the City failed and refused to process her grievance in retaliation for her EEOC and OCRC charges.

Counsel advised the district court at a status conference that Horn's grievance was presented at an arbitration hearing and a final decision was expected in March 2015. On the district court's order that the parties brief why Horn's complaint should not be dismissed "in light of the binding Arbitration proceeding on the identical issues," PID 143/Order 1/26/15, the parties stipulated as follows:

1. With respect to the arbitration of a union grievance between Plaintiff and the City of Cleveland, in which Plaintiff participated on December 16, 2014, no decision has been forthcoming from that arbitration as of this date.
2. Plaintiff and Defendant agree that the issues adjudicated, or which will be adjudicated, in that arbitration proceeding, do not bar under the doctrines of res judicata or collateral estoppel or otherwise, Plaintiff's claims in this case.

PID 147/Stipulation 2/9/15.

## **Arbitration of Horn's Contractual Claim**

The issue before the arbitrator was whether the City violated Article 25 of the Collective Bargaining Agreement (CBA), titled "Promotions and Transfers," by not promoting Horn. Article 25 provides in pertinent part:

70. [] The City shall award the vacancy to the most qualified applicant within the bargaining unit. Only when the qualifications of two (2) or more applicants are equal will the position be awarded on the basis of seniority. All determinations regarding qualifications remain within the sole discretion of the City.

. . .

72. The Employer shall consider the following factors to determine the qualifications of the applicants:

A. Seniority;
B. Past performance/work-related experience/demonstrated abilities/previous temporary transfer;
C. Work-related experience with another employer (where such information is provided by the employee);
D. Aptitude;
E. Education/training;

  F. Prior discipline imposed during the two year period immediately preceding the date of the bid notice;

  G. Lack of interest/failure to follow through;

  H. Opinion of supervisors, judgment of applicant's knowledge, skills and ability;

  I. Past attendance record . . .

  J. Any special requirements reasonably related to the bid position.

PID 489-91/CBA.

The Arbitrator issued his ruling in March 2015, sustaining Horn's grievance in part on the basis that the evidence clearly and convincingly showed that Horn was as or more qualified for the Foreman I position than the other applicants.

The arbitrator noted in particular that Nathaniel Mason, one of the men promoted to Foreman I, had received a two-day suspension for neglect of duty, insufficiency in work, and wasteful use of public supplies or equipment relative to a June 30, 2011, incident in which Mason was "observed moving furniture on City time, which is a violation of the City of Cleveland's Policies and Procedures." PID 624. The Employee Incident Report completed by Mason's superior, Assistant Superintendent Thornton, states that Mason "was observed carrying bedding into a resident [sic] house . . . who has five small children and they had nothing to sleep on." PID 625.

Regarding the Assistant Superintendent position for which Horn had bid, the Arbitrator concluded that there was insufficient evidence to show that the City's decision to select Michael Nunn over Horn was arbitrary, an abuse of discretion, or otherwise clearly erroneous.

**City's Motion for Summary Judgment**

On the City's motion for summary judgment following discovery, the district court determined that Horn established a prima facie case of sex discrimination, that the City

articulated legitimate, non-discriminatory reasons for not promoting her, and that Horn did not meet her burden of showing "that the City's proffered reasons were insufficient to warrant the challenged conduct; thus, she failed to establish pretext." PID 785.

As to Horn's retaliation claim, the district court determined that she failed to establish the fourth prima facie element—that there was a causal connection between her EEOC/OCRC filings and either her disciplinary suspensions or the alleged delayed processing of her grievances.

## III.

This court reviews de novo the district court's grant of summary judgment. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). The district court must construe the evidence and draw all reasonable inferences in the nonmoving party's favor in determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Because Horn relies on circumstantial evidence of discrimination, we apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The district court determined that Horn established a prima facie case, which, in the failure-to-promote context, consists of showing that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and denied the

promotion(s); and (4) an individual of similar qualifications who was not a member of the protected class received the promotion(s) at the time the plaintiff's request for promotion was denied. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). We agree.

The burden then shifted to the City to articulate a legitimate, non-discriminatory reason for not promoting Horn. The City met that burden by proffering the following reasons: her past performance, prior discipline, and lack of aptitude and follow through. The City also asserted that Horn was the only candidate who received negative reviews from her supervisors. Horn must therefore "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

A plaintiff may establish pretext by showing that the employer's proffered reason for the adverse employment action (1) has no basis in fact, (2) did not actually motivate the action, or (3) was insufficient to warrant the action. *See e.g., Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). This "three-part test need not be applied rigidly. Rather, 'pretext is a commonsense inquiry: did the employer [fail to promote] the employee for the stated reason or not?'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (citation and alteration omitted). "[A] reason cannot be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Seeger*, 681 F.3d at 285 (alteration omitted) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993)). Thus, regardless of which rebuttal method a plaintiff uses, "[s]he always bears the burden of producing sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against h[er]." *Id.* (alterations omitted).

**A.**

Horn contends she raised a genuine issue of material fact regarding pretext because she was more qualified than other male applicants, but did not get promoted to either Foreman I or assistant superintendent. Horn had greater seniority and was a supervisor for much longer than other applicants. But seniority matters under the collective bargaining agreement "[o]nly when the qualifications of the two (2) or more applicants are equal." (PID 489). In other words, seniority is a "tie breaker." (PID 431). And as a result of her seniority, Horn also had more on-the-job supervisory experience than other applicants. But others also had supervisory experience.

More importantly, the record makes clear the City did not give this experience much weight in light of Horn's job performance (and as compared to other applicants).[1] Commissioner Owens made the decision of whom to promote, with the assistance of Ludwig. According to Horn, Owens told her that she was not promoted because of discipline she had received while an acting Foreman I. A Foreman I's job duties, are, in Horn's words, to "oversee the foremen to make sure they're doing their job. . . . [H]e makes sure they get assigned to the right jobs, [a]nd he oversees the area getting picked up." (PID 394).

On December 5, 2011, while acting as a Foreman I, Horn failed to ensure a particular garbage collection route was collected because, she claims, she was unfamiliar with, and had not been trained on, the route, despite having a map of the area. The City discovered this failure because, and quite coincidentally, Ludwig lived on the route that Horn's crew missed. Ludwig

---

[1]Horn's "subjective view of her qualifications in relation to those of the other applicants, without more, cannot sustain a claim of discrimination." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004).

then discovered Horn authorized a crew to pick up the uncollected trash off-the-clock without notifying her supervisors of the incident, and questioned whether the City would have discovered Horn's infraction had he not lived where he did. Horn received a one-day suspension.

This incident weighed heavily against Horn's requested promotion in regard to three of the criteria set forth in the union contract: past performance, aptitude, and prior discipline. It appeared that she lacked the basic ability to read routes on a map, attempted to conceal her error, and exposed other city workers and the City to possible liabilities by having them collect garbage off-the-clock. As a supervisor, commented Ludwig, "she not only has to enforce the policies and procedures, . . . she needs to follow them also. And she was negligent in doing that." (PID 681).

Although Mason had been suspended for two days for moving furniture for a city resident using a city truck, Ludwig testified that the distinguishing factor between these incidents is that Horn's infraction involved her supervisory skills:

> But I'm looking at this and it looks like this was him and a vehicle. And definitely this is a serious infraction, but we're also looking at, Ms. Horn had multiple people under her supervision that were putting the City at risk.

(PID 445). Given this distinction, reasonable minds could not view Horn's suspension and Mason's suspension as comparable.

The City also discounted Horn's application for "lack of interest" because after assuming an acting Foreman I position in December 2010, she voluntarily stepped down in April 2012— just a few months before she applied again for the same job. In Ludwig's view, this "really spoke volumes as far as for [her] not wanting to stay in that position." (PID 435; *see also* PID 682).

Horn initially stepped down from this position by way of a one-sentence letter. She then wrote a follow-up letter, detailing her reasoning. In it, she protests that the City promoted a male

employee (Michael Nunn) to the Acting Superintendent position instead of her and without posting the position because of the failure-to-collect waste incident discussed above. She then complains that it was "really unfair" that she was "disciplined for things I have no control over," suggesting that the City's failure to properly train her led to that discipline. (PID 354-55, 399). But she insists that she has always been capable of performing her job duties.

Ludwig testified that he was unaware of Horn's letter to Owens. Horn did not depose or present an affidavit from Owens, and he was not called to testify at the arbitration hearing. In any event, assuming, as the City acknowledged at argument, that Owens, as the addressee, received Horn's letter, the letter does not move the needle with respect to the City's conclusion that Horn lacked interest, or raise the specter of sex discrimination—she stepped down from her supervisory position as an Acting Foreman I for the possibility of pursuing the assistant superintendent supervisory position, and then reapplied for the Foreman I job shortly thereafter. She also testified she did not receive consideration for the assistant superintendent position because of the trash collection incident she does not dispute occurred. The City's determination that Horn lacked interest in an Acting Foreman I position is rationally supported.

At most, Horn showed that she was "marginally more qualified than the successful candidate[s]." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006). In resolving an ADEA claim in the reduction-in-force context, we held that qualifications evidence will be sufficient to raise a question of fact as to pretext if the plaintiff provides other probative evidence of discrimination.[2] *Id.* at 626-27. This would include, for example, evidence of a workplace permeated with frequent degrading remarks about women. *See*, *e.g.*, *Risch v. Royal Oak Police*

---

[2]This is especially the case with respect to the assistant superintendent position, as Horn makes no argument as to why she was more qualified than the male who received that position, Michael Nunn.

*Dep't*, 581 F.3d 383, 392–93 (6th Cir. 2009). The district court rightly found Horn did not

present such evidence, dismissing three passing references to her sex:

> She insists that supervisors and managers discriminated against her because she is a female. With regard to Kevin Campbell, a Foreman I: " I was subjected to harsh talking. . . . I was just getting – getting – my men was getting taken away from me. I was getting harsh treatment. Every day I was coming to work, I was getting harsh treatment."

> As to Warren Thornton, her immediate supervisor:

> Q. Was he difficult to work for?
> A. Was he? Yes.
> Q. In what respect?
> A. It was just a . . . It was just like, this is a man's job. He made it hard for women. He was really difficult to work with.
> Q. Was he verbally abusive?
> A. He was not so much verbally abusive, he was just hard on women.
> Q. As opposed to men?
> A. Yes.
> Q. Can you give me an example?
> A. I mean, he would say something like, this is a man's job.
> Q. In a discouraging manner?
> A. Um-hmm.

> Concerning General Superintendent Ludwig:

> A. Basically, I remember mentioning something to him, saying something to him. I know I said something to him in a hostile manner, yeah.
> Q. In a hostile manner?
> A. Because I felt he was discriminating to me, yeah, and I told him.
> Q. So you discussed with him the issue that you were not getting the proper training in the foreman I position?
> A. No, I didn't discuss that.
> Q. What did you discuss with him?
> A. I told him that he don't call me. When I'm on the radio, he don't call me. He would just bypass me and call the men. He just totally ignored me, and I knew that, and I told him that.

> There is no probative evidence that Campbell or Thornton had any input into the promotion decision. Commissioner Owens was the ultimate decision-maker; but there is testimony that Ludwig would confer with Owens about the candidates and the applicable criteria. Nevertheless, the statements by these three individuals

have no context; there is no timeframe provided; and therefore, the intent of the speakers is unclear. "Isolated or ambiguous comments are too abstract to be considered as circumstantial evidence of discrimination in pretext analysis;" and thus, Plaintiff fails, in this regard, to meet her burden of showing pretext by a preponderance of the evidence. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355-57 (6th Cir. 1998).

(PID 782-84).

Title VII "does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons." *Browning v. Dep't of Army*, 436 F.3d 692, 698 (6th Cir. 2006) (citation omitted). "As we have oft times repeated, 'it is inappropriate for the judiciary to substitute its judgment for that of management.'" *Hedrick*, 355 F.3d at 462 (6th Cir. 2004) (citation omitted). Put another way, "[o]ur role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." *Id.* (citation omitted). And in the case of management positions, like those for which plaintiff applied, we afford "even greater flexibility in choosing a management-level employee . . . because of the nature of such a position." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987).

**B.**

None of Horn's evidence, read in her favor, supports that a reasonable jury could find that the City's proffered reason for not promoting her was manufactured to conceal discrimination. Nor has Horn produced any evidence that the ultimate decision maker, Commissioner Owens, held any animus against her on the basis of her sex. The district court properly granted the City summary judgment on Horn's sex-discrimination claim.

**IV.**

As for her retaliation claim, Horn maintains that she was unjustly disciplined in May 2013 because she filed an EEOC/OCRC charge in November 2012. Specifically, Horn was suspended for fifteen (non-consecutive) working days based on an April 12, 2013 incident, for neglect of duty, conduct unbecoming an employee in the public service, insubordination, and "for other failure of good behavior which is detrimental to the service, or for any other act of misfeasance, malfeasance, or nonfeasance in office." PID 321-22. In May 2013, the Union grieved that suspension on Horn's behalf. In August 2013, Horn filed charges with the OCRC asserting gender discrimination and retaliation in connection with the fifteen-day suspension.

Title VII prohibits an employer from retaliating against an employee because she "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim can be established either by direct evidence or by circumstantial evidence that would support an inference of retaliation. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Because Horn relies on circumstantial evidence, we analyze her claim under the *McDonnell Douglas* burden-shifting framework. *McDonnell-Douglas*, 411 U.S. at 802.

To establish a prima facie case, Horn must show that (1) she engaged in protected activity, (2) her exercise of protected rights was known to the City, (3) the City took adverse employment action against her, and (4) there was a causal connection between her protected activity and the adverse employment action or harassment. *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). "The burden of proof at the prima facie stage is minimal; all

the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). If Horn carries her burden of establishing a prima facie case of retaliation, the burden of production of evidence shifts to the City to articulate some legitimate, nondiscriminatory reason for its actions. If the City satisfies its burden, the burden shifts back to Horn to demonstrate that the employer's proffered reason was not the true reason for the adverse employment action. *Laster*, 746 F.3d at 730. "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "require[ ] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 731 (citation omitted).

## A.

There is no dispute that Horn established the first three prima facie elements. The City argued, and the district court agreed, that Horn did not establish the fourth prima facie element—that there was a causal connection between her protected activity, the filing of her EEOC/OCRC charges asserting sex discrimination and retaliation in late November 2012, and the fifteen-day suspension imposed in May 2013, five months later.

During an ongoing investigation by the City of Cleveland prosecutor's office of a motor-vehicle accident in which one of Horn's crew was involved, Horn went to the accident victim's home and attempted to convince the victim that her crew member was not the cause of the accident. The prosecutor's office learned of Horn's visit and called Commissioner Randell

Scott,[3] who issued Horn a fifteen-day suspension as a result. Scott played no part in the determinations not to promote Horn and testified at the arbitration hearing that Horn's failure-to-promote complaints played no role in the decision to suspend her.

**B.**

As the district court observed, it was Horn's burden to present sufficient evidence from which an inference could be drawn that the City would not have issued the disciplinary suspension had she not filed a discrimination charge. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). In this regard, evidence that the City treated Horn differently than similarly situated employees is relevant to causation. *See id.* ("Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees . . . is relevant to causation."). Horn's OCRC charge stated that, to her knowledge, no other manager had been issued a fifteen-day suspension within the past several years, but she failed to identify any other managerial employee and submitted no evidence that another employee received a lesser penalty for a similar infraction, thus the district

---

[3]Commissioner Scott replaced Commissioner Owens when Owens retired in late 2012. PID 419. Scott testified that he reviewed Horn's denial-of-promotion grievance while he was Acting Commissioner. Scott's letter to the Union regarding the Step 1 Grievance Hearing stated in pertinent part:

> Based upon the facts presented at the grievance hearing, it has been determined that under the Local 1099 Contract, (promotions and transfers) Ms. Horn's discipline history during the two year period immediately preceding the date of the bid notice for Waste Collection Foreman was weighed by the City for this position. She was not found to be the best candidate, per the union's contract criteria for said position. Therefore, it has been determined that this grievance has no merit and is denied at Step 1.

PID 584.

court properly granted summary judgment on her claim that the City unjustly disciplined her in retaliation for her protected activity.

Horn did not argue below, nor does she on appeal, that she established a causal connection between her protected activity in November 2012 and the fifteen-day suspension issued in May 2013 based on temporal proximity.

We conclude that the district court properly determined that Horn presented insufficient evidence of a causal connection between her protected activity and the fifteen-day suspension, the fourth prima facie element of her retaliation claim, and thus properly dismissed that claim.

## V.

Horn's final argument is that she "has been denied the regular and timely processing of her grievances that might have remedied her situation, all for the reason that she filed charges with the EEOC." Appellant Br. 23; PID 742.

The district court acknowledged that resolution of Horn's failure-to-promote grievance took years (from approximately November 2012 until March 2015, when the Arbitrator issued his ruling). The CBA provides that "prompt adjustment of grievances is desirable . . ." PID 507. As the district court noted, however, the term "prompt" is not defined in the CBA. The district court determined, and Horn does not dispute, that "[i]t is obvious that the EEOC charges and the instant lawsuit inserted delays into the process," and that Horn provided no evidence of what a typical timeframe is for processing a grievance of this kind. The district court remarked that "the Arbitrator found, without assessing blame, that the 'delay undoubtedly was influenced by the pending court litigation that involves similar factual issues relative to the denial of the Grievant's

promotional bids,'" and that Horn's contentions that the procedural delays evidenced retaliatory animus "are defeated by her own stipulation at the Arbitration Hearing: 'The parties stipulated that all procedural and substantive requirements of the grievance/arbitration provisions and the CBA were complied with.'" PID 641/Arbitrator Op.; PID 790/Dist Ct. Op.

We agree with the district court and affirm the dismissal of Horn's retaliation claim asserting untimely processing of grievances.

**VI.**

For the reasons stated, we AFFIRM the district court's grant of summary judgment to the City of Cleveland.

**HELENE N. WHITE, Circuit Judge** (concurring in part and dissenting in part). I agree with the majority's disposition of Horn's retaliation claims, but respectfully dissent regarding her sex discrimination claim.

**I.**

The parties agree that Horn is the only woman in the history of the City of Cleveland's Waste Collection and Disposal Division to have held a Foreman position. She was promoted to Foreman in 1996. Fourteen years later, in December 2010, she was appointed Acting Foreman I at the Ridge Road station (not her usual station), where she also occasionally filled in for the Assistant Superintendent, Wayne Thornton.

After holding the Acting Foreman I position for about one year, Horn was suspended for one day based on an incident on December 5, 2011, when one of the crews she supervised left trash uncollected and she had the crew collect the trash after hours without advising her supervisor.

On April 17, 2012, Horn notified then-Commissioner Ronnie Owens in writing that she was resigning the Acting Foreman I position, "I Toni Horn will like to relinquish my position as a Foreman I at Ridge Road and therefore go back and continue my position as a waste collection Foreman." PID 596. By letter dated April 19, 2012, Commissioner Owens advised that he accepted Horn's request and that, effective April 18, 2012, she was to report to her former position as Foreman of District 120. PID 597. Commissioner Owens carbon copied Horn's personnel file. That same day, Horn clarified in a letter to Commissioner Owens why she resigned: a male under her supervision had been promoted to Assistant Superintendent while she

was on vacation and she had not been informed that an Assistant Superintendent position was

open:

> First, . . . I am not removing myself from the position because I cannot perform the job because I can and have been doing so. I have been in the position . . . for eleven months and have been a foreman for 15 years so I am fully aware of the policies and procedures as a foreman. As Acting Foreman 101, I have been in charge of running the Station whenever the Assistant Superintendent Warren Thornton would be off for any reason, . . . I ran the station well. What I don't seem to understand is why when I returned from vacation there were changes made in which Asst. Superintendent Warren Thornton was transferred out, and Michael Nunn was placed into the position . . . when I was just working over him [Nunn] as Foreman 101.
>
> I was never informed of any opening whether it be acting or not, of the Assistant Superintendent position. The reason I was told during a grievance hearing on April 16, 2012 for not receiving the position is because I supposedly left some garbage out in District 110. A district I was never properly trained in because I always had to train other acting Foremans [sic] in District 130. It is really unfair that I continuously get disciplined for things I have no control over as Acting Foreman 101. All I am asking is that I be provided the same opportunity the two other Senior Foreman one's [sic] (James Grant & Tim Owens) received seeing that I am the next Senior Foreman.
>
> I would like to be considered for the position as Asst. Superintendent or Foreman 101 . . . when it is properly posted, I can receive proper training in all districts, and am no longer just acting in these positions.

PID 598-99; 4/19/12 letter.

In June 2012, several months after resigning the Acting Foreman position, Horn

unsuccessfully bid for three Foreman I positions and one Assistant Superintendent position.

Four men were promoted to those positions.[1]

---

[1] Vincent Callahan, Nathaniel Mason, and Kevin Campbell were promoted to Foreman I, and Michael Nunn was promoted to Assistant Superintendent.

## II.

The district court concluded that the City made a reasonably informed and considered decision not to promote Horn given her disciplinary record, which the court deemed unlike the lesser disciplinary infractions of the men selected. The district court also concluded that Horn's record, disciplinary and otherwise, demonstrated a lack of interest and aptitude. PID 784-85.

To demonstrate pretext at the summary judgment stage, Horn must show by a preponderance of the evidence either 1) that the City's proffered reasons for not promoting her had no basis in fact, 2) that the proffered reasons were not the true reason, or 3) that they were insufficient to motivate the failure to promote her. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

Viewing the facts in a light most favorable to Horn, she presented sufficient evidence for a reasonable factfinder to reject the City's proffered reasons for denying her promotions, e.g., find them unworthy of credence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated . . . ."). First, she had the most seniority of any candidate and had held a managerial position much longer than Mason, whose resume states that he became a foreman in 2011. Second, she had prior experience as an Acting Foreman I and had filled in for Assistant Superintendent Thornton, neither of which are indicated on Mason's resume. PID 613-14. Third, reasonable minds could differ regarding whether Horn's one-day disciplinary suspension for neglect of duty is, as Ludwig testified, "the most severe" among the applicants; rather, Mason's two-day suspension for neglect of duty, insufficiency in work, and

-19-

wasteful use of equipment could be found more severe. The district court improperly found as fact that "Mason's use of a City truck for non-City business during work hours . . . did not reflect on his ability to perform a Foreman's tasks." PID 785. Fourth, Ludwig's perception that Horn lacked interest and follow through because she declined a non-managerial promotional opportunity to a Transfer Station Attendant, which the district court assumed as fact, PID 786, is without record support. As the arbitrator observed, Horn maintained that she was never offered the position and there is no evidence any interview took place. PID 643. Fifth, Ludwig's perception that Horn lacked interest because she resigned her Acting Foreman I position, which the district court determined "rationally justified Defendant's view that Plaintiff lacked interest or showed a failure to follow through," PID 785, was based on Horn's two sentence letter to Commissioner Owens, and not her explanatory letter of two days later to Commissioner Owens, which explained that she was resigning the position because a male had been promoted to Assistant Superintendent when she had no opportunity to bid on that position and while she was away on vacation. As the arbitrator noted, there is no indication that Horn's complaints of discrimination in her explanatory letter to Commissioner Owens were ever investigated.

The district court improperly made factual findings and weighed credibility when it determined that the City made a reasonably informed and considered decision not to promote Horn. Along with her prima facie case, Horn presented sufficient evidence from which a fact-finder could find the City's proffered rationales for not promoting her were unworthy of belief. I would thus reverse the grant of summary judgment on Horn's sex discrimination claim.