NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0279n.06

Case No. 23-1685

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| | ) | Jun 27, 2024 |
| KAREN TAYLOR, | ) | KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| INGHAM COUNTY CIRCUIT COURT, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | O P I N I O N |

Before: STRANCH, LARSEN, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Karen Taylor worked as a pretrial services investigator at a state court in Ingham County, Michigan for thirteen years. In 2019, Taylor applied for but was not chosen for a newly created senior position with the court. Instead, a co-worker, whom Taylor had trained and who had fewer years with the court, received the promotion. Taylor filed suit against the court, alleging that its decision denying her this promotion and its overall hiring and promotion practices violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., ("Title VII"). The district court granted summary judgment in favor of the circuit court on Taylor's disparate treatment and disparate impact claims. For reasons explained herein, we affirm.

**I.**

*Taylor's Background as a Pretrial Services Investigator.* Taylor is an African American woman who, during the time-period relevant to her complaint, had over twenty-six years of

experience working in multiple state court systems. Taylor's experience included working as a probation officer in Jackson County, Michigan, and as a juvenile probation officer in Atlanta, Georgia, for a combined period exceeding 10 years. During her early days with Jackson County, she also briefly served as the court services manager for the traffic division. She began working as a pretrial services investigator ("PSI") for the 30th Judicial Circuit Court for Ingham County (alternately, "Ingham County" or the "circuit court") in 2006 and remained in that position until June 2019, when she retired. As a PSI, Taylor's responsibilities included interviewing defendants who were in custody and completing bond investigation reports for judges to review prior to the defendants' arraignments as well as making bond recommendations to the court. Taylor reported to Rhonda Swayze, the deputy court administrator, throughout the duration of her time as a PSI with the circuit court.

Taylor's experience with the Pretrial Services Division extended beyond her specific responsibilities concerning pretrial detainees. For instance, in 2015, Taylor successfully ran the Pretrial Services Division by herself for a month after two of her fellow PSIs resigned. She also helped to interview their replacements—Gregory Feamster and Jessica Escobedo-Emmons. Taylor later trained Feamster and Escobedo-Emmons, including on the Law Enforcement Information Network ("LEIN") system, which she regularly used to run criminal background checks on defendants. Taylor alone possessed a LEIN Terminal Agency Coordinator ("TAC") credential, which was included as a qualification for the position for which she sought a promotion.

During her 13-year tenure with the circuit court, Swayze deemed Taylor to be a good PSI. Taylor was never subjected to any formal discipline—only informal counseling concerning a few discrete incidents—over the course of her time with the court. For example, on Taylor's first day of work she was counseled for failing to disclose on her job application that she was related to a

previous supervisor who worked at the circuit court. Swayze also occasionally stepped in to counsel Taylor concerning her conduct in the courthouse setting and workplace disputes. Specifically, Swayze testified that toward the middle of Taylor's tenure with the circuit court, a judge complained that Taylor had gotten into a verbal altercation while attending to a personal matter that spilled out into the hallway of the courthouse. And sometime between 2012 and 2013, Swayze referred Taylor and another PSI to an employee assistance program so the two could work on their professional relationship. Swayze further testified that Taylor occasionally got into "scruffs" with Lansing Police Department officers while interacting with them in relation to her job duties.

*Promotional Opportunity—Senior PSI.* In or around May 2018, the circuit court re-established the quasi-supervisory position of senior pretrial services investigator ("senior PSI").[1] The senior PSI was tasked with assisting the deputy court administrator with the day-to-day operations of the Pretrial Services Division. The circuit court posted the position in January 2019, opening it only to internal candidates who previously, or at the time of the posting, performed the job of PSI. The circuit court interviewed three applicants: Taylor, and fellow PSIs Feamster (a white male) and Escobedo-Emmons (a Hispanic female).

A three-member panel comprised of Swayze (a white female), George Strander (a white male), and Mary Sabaj (a white woman) conducted the interviews. The panel passed along its recommendation to Chief Judge Richard Garcia (a Hispanic male), who made the final decision. During the interviews, the panel asked each candidate the same nine prepared questions and one

---

[1] Ingham County states that the role was a "quasi-supervisory" position, as a purely supervisory position would have been outside the scope of the collective bargaining agreement between Ingham County and the Ingham County Employees Association.

additional question crafted by Strander. The panelists then scored each candidate on the prepared questions but not on the added question.

The panelists scored and made notes regarding the candidates' responses to the questions posed. The score for each question ranged from 0 to 10; the aggregate scores from each of the panelists were then combined to calculate a total score. Taylor received the lowest cumulative score among the three interviewees. She was also the lowest-scored candidate by each of the panelists individually. The scores broke down as follows:

30th Judicial Circuit Court Clerk's Office
Score Sheet, Recommendation, & Summary

Position: Sr. Pretrial Services Investigator
Interview Date(s): February 7, 2019

| Candidates | Interview Panel Members | | | Culm. Score |
| | Mary Sabaj | George Strander | Rhonda Swayze | |
| --- | --- | --- | --- | --- |
| essica Escobedo-Emmon | 71 | 49 | 62 | 182 |
| Greg Feamster | 79 | 59 | 77 | 215 |
| Karen Taylor | 57 | 34 | 58 | 149 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |

Shortly after the interviews but before the hiring decision was made, Taylor took medical leave. While Taylor was on leave, Chief Judge Garcia appointed the highest-scoring candidate, Feamster, to the role. Taylor learned via email from Swayze that she did not get the position and that Feamster was the successful candidate. Taylor returned to her job in March 2019. While working under Feamster's leadership, it appeared to Taylor that he was "lost" and that "he didn't know what he was doing." (R. 39-2, PageID 258). Taylor remained in her position for a few more months, then voluntarily retired in June 2019.

*Lawsuit against the Circuit Court.*  Taylor filed the instant suit after receiving a right to sue letter from the EEOC.  The complaint alleged two Title VII racial discrimination claims, one for disparate treatment and the other for disparate impact.  Ingham County moved for summary judgment.  The district court granted the motion, entering a final judgment on March 24, 2023.  Taylor subsequently filed a motion for reconsideration, which the district court denied.  Taylor timely appealed.

## II.

We review a district court's grant of summary judgment de novo.  *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).  Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  As the party seeking summary judgment, Ingham County bears the burden of showing that there are no genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  We view all facts, including inferences, in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is whether the evidence presents a sufficient disagreement to require submission of Taylor's claims to a jury or whether the evidence is so one-sided that Ingham County must prevail as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III.

### A. Disparate Treatment/Failure to Promote

Taylor first argues that Ingham County denied her the promotion to the senior PSI position on account of her race.  Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e–

2(a)(1). An employee may establish a claim of discrimination either by introducing direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of discrimination. *Shazor v. Pro. Transit Mgmt., Ltd.*, 744 F.3d 948, 955 (6th Cir. 2014). Where, as here, the claim is based on circumstantial evidence (and does not rely on a mixed-motive theory), courts employ the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*; *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (clarifying the *McDonnell Douglas* burden-shifting framework). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Once the plaintiff satisfies the elements of a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its actions. *Id.* at 730 (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). If the defendant meets its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason for the adverse action. *Id.*

1. *Prima Facie Case*

"In a failure to promote employment discrimination case, the Sixth Circuit has modified the elements of the test to fit the specific context." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000)). As modified, the plaintiff must show that:

> (1) [s]he is a member of a protected class; (2) [s]he applied for and was qualified for a promotion; (3) [s]he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied.

*Nguyen*, 229 F.3d at 562–63; *see also White*, 429 F.3d at 240.

Here, Ingham County agrees with Taylor that she has established a prima facie case for discrimination based on race. The point of contention centers on whether the circuit court's proffered reason for denying Taylor the promotion was merely a pretext for a racially discriminatory decision.

2. *Legitimate, Nondiscriminatory Reason*

Ingham County argues that it had legitimate, nondiscriminatory reasons for not promoting Taylor. Specifically, the circuit court contends that Feamster had stronger leadership experience and interviewed substantially better than Taylor for the senior PSI position. As proof, Ingham County points to Feamster's sixteen years' experience as a sergeant—a supervisory position—for the Fenton Police Department, which in terms of length, surpassed Taylor's leadership and supervisory experience. And none of the panelists thought Taylor interviewed well, whereas they were impressed by Feamster's performance. For instance, Sabaj opined that Feamster was more enthused about the role during his interview and showed signs of maturity and professionalism. In contrast, Taylor's responses to interview questions were short, and rather than highlighting her own qualifications, she used her time to criticize her coworkers. Similarly, Swayze remembered being surprised by how poorly Taylor performed in her interview and by her overall lack of preparation. Feamster, on the other hand, stood out in Swayze's eyes because he gave examples of how he could build a team, increase employee engagement, and support a positive environment. Likewise, Strander recalled that "Feamster did a tremendous job" in his interview, stating that it was "quite evident that he was very prepared" and "had thought long and hard about pretrial services." (R. 39-5, PageID 334). But Taylor, according to Strander, was ill-prepared.

Ingham County also argues that Taylor's disciplinary record was worse than Feamster's— a fact that may provide another legitimate, non-discriminatory reason for declining to promote.

*See, e.g.*, *Tartt v. City of Clarksville*, 149 F. App'x 456, 458–59 (6th Cir. 2005) (finding that appellant's myriad disciplinary and personal problems, and not his race, prevented him from being rehired). Specifically, the circuit court points to Taylor's history of counseling related to conflicts with coworkers and personnel in related agencies compared to Feamster's single instance of discipline for a non-work-related social media post. Over the years, Swayze counseled Taylor for several workplace conflicts and once fielded a complaint about unprofessional behavior from then-Chief Judge Frank DeLuca concerning Taylor's involvement in a loud verbal dispute at the courthouse that spilled out into the hallway. Taylor also periodically got into disputes with Lansing police officers because she "got loud with them" or "confronted them about something," which resulted in Swayze receiving calls about the quarrels. (R. 39-6, PageID 366). Swayze also recounted a heated incident between Taylor and a coworker that led Swayze to refer them both to the circuit court's employee assistance program to improve workplace relations.

During Feamster's almost four years as a PSI, he was formally disciplined once after the circuit court's human resources director received a complaint about several of Feamster's Facebook posts on his personal Facebook page. In one post, Feamster described a protester in the news as a "thug" and used other explicit language. And in another, he celebrated a post criticizing women who protested against the appointment of a then-United States Supreme Court nominee. Because Feamster's Facebook page identified himself as an employee of Ingham County, he was disciplined with a written warning and mandated to participate in additional training. Swayze testified that Feamster promptly and thoroughly completed the performance improvement plan that stemmed from the incident. In comparing the candidates' records, Swayze noted that Feamster had a single instance of discipline while Taylor had multiple instances of informal counseling for contentious conduct.

Ingham County's explanation that Taylor's substantially lower interview ratings and purportedly worse disciplinary record governed its decision not to promote her to senior PSI are facially legitimate and non-discriminatory reasons for not promoting Taylor. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 616 (6th Cir. 2003) (accepting higher interview score as a legitimate, nondiscriminatory reason for a plaintiff's non-selection and rejecting plaintiff's pretext reasons as refuting that legitimate reason); *Horn v. City of Cleveland*, 674 F. App'x 511, 516 (6th Cir. 2017) (stating that while the chosen candidate had been suspended, the plaintiff who had also been disciplined, was not successful because her infraction involved her supervisory skills and thus was not as comparable). Taylor must therefore show that a reasonable jury could find, by a preponderance of evidence, that Ingham County's reasons were a pretext for discrimination. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391–92 (6th Cir. 2008).

3. *Pretext*

A plaintiff may demonstrate that an employer's proffered reason is pretextual by showing that it "(1) has no basis in fact, (2) did not actually motivate the . . . challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (alteration in original) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)). "[I]f the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence

that no discrimination . . . occurred," the employer is entitled to summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

Taylor does not argue that Ingham County's proffered reason for declining to promote her lacked any basis in fact. Instead, she asserts that Ingham County's stated reasons for denying her the promotion—poor interviewing, history of workplace disputes and disciplinary counseling, and comparatively less leadership experience than Feamster—did not actually motivate its decision not to promote her. According to Taylor, circumstantial evidence shows that the circuit court did not promote her because of her race. To demonstrate that a defendant's proffered reason did not actually motivate an adverse employment action, a plaintiff can "attack[] the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant.'" *Hartman v. Dow Chem. Co.*, 657 F. App'x 448, 453 (6th Cir. 2016) (quoting *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000)). Taking this approach, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Id.* at 453–54 (internal quotation marks omitted) (quoting *Smith*, 220 F.3d at 759).

For failure to promote cases, we have said that:

> Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination.

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (internal quotation marks omitted) (quoting *Bartlett v. Gates*, 421 F. App'x 485, 490–91 (6th Cir. 2010)).

Arguing that the court engaged in improper weighing of the evidence, Taylor faults the district court for concluding that she was not the "plainly superior candidate." And she remains

steadfast in her contention that she had "superior qualifications" for the role. (ECF 22, Appellant's Br. 19–20). While her argument on appeal skews more heavily toward showing that she was "as qualified if not better qualified" than Feamster and that there is "other probative evidence of discrimination," we address both potential grounds for pretext. *See Provenzano*, 663 F.3d at 815–16. Taylor offers the following factual support to demonstrate pretext: (1) her length of experience with the court and as a PSI substantially exceeded Feamster's; (2) at the candidacy stage, she alone possessed the LEIN TAC credential; (3) she offered supervisory and managerial qualifications; (4) she suggested the creation of the senior PSI position; (5) the interview panel included only white participants, inconsistent with the circuit court's hiring policy; (6) Feamster had a history of formal discipline; and (7) Judge Aquilina provided testimony regarding discriminatory practices and policies of the circuit court. For reasons explained below, Taylor has not presented evidence from which a juror could find that she was the "plainly superior candidate" for the position. And even accepting Taylor's argument that she was "as qualified if not better qualified" than Feamster, none of the factors she points to amount to "other probative evidence of discrimination." The first four factors speak more to Taylor's relative qualifications, while the latter three purportedly provide other probative evidence of discrimination.

      a. "Plainly Superior Candidate"

To the extent that Taylor premises her argument on the assertion that she was the plainly superior candidate, "[r]elative qualifications establish triable issues of fact as to pretext where the evidence shows that . . . the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former[.]" *Bartlett*, 421 F. App'x at 490–91; *see also Provenzano*, 663 F.3d at 816–17. Thus, to meet her burden, "[Taylor] must objectively demonstrate h[er] superior qualifications." *Artis v. Finishing Brands Holdings, Inc.*,

639 F. App'x 313, 320 (6th Cir. 2016). "If two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the others." *Aday v. Westfield Ins. Co.*, No. 21-3115, 2022 WL 203327, at *5 (6th Cir. Jan. 24, 2022) (quoting *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 628 (6th Cir. 2006)). In determining whether Taylor has met her burden, we "must avoid 'acting as a "super personnel department," overseeing and second-guessing employers' business decisions.'" *Id.* (quoting *Bender*, 455 F.3d at 627). We have an "exceptionally high standard for satisfying the burden of proving a plaintiff is the plainly superior candidate." *Id.* at *6. For instance, in *Bartlett v. Gates*, we found that although the plaintiff there had 24 years of experience and other distinguishable qualifications in comparison to the selected candidate's 8 years of experience, the plaintiff was not plainly superior. 421 F. App'x at 490–91.

Here, Taylor has not shown that she was the plainly superior candidate. According to the job description for the senior investigator role, the candidate selected for the position would work "[u]nder the general supervision of the Deputy Court Administrator [to] oversee[] the training and development and act[] as [a] team leader for Pretrial Services Investigators[.]" (R. 39-9, PageID 481). The candidate selected would also "assist[] in [the] development of policies and procedures related to the duties of the Pretrial Services Investigators" and "serve[] as the LEIN TAC for the [circuit court]." (*Id.*). The job description further required that the successful candidate possess a bachelor's degree in criminal justice, public administration, or a related field. Starting first with Taylor's seniority argument, it is true that she possessed more experience in the Pretrial Services Division than Feamster. Specifically, Taylor worked as a PSI for 13 years while Feamster had less than four years in the role. Taylor was also the only candidate who possessed the LEIN TAC credential at the time of the interviews. With respect to her supervisory and managerial

qualifications, Taylor served as a court services manager in Jackson County's 12th district court traffic division in 1993. And in 2015, she successfully ran the Pretrial Services Division for a month after two investigators resigned. Taylor also helped to interview and train both Feamster and Escobedo-Emmons for their PSI roles. Finally, there is evidence in the record that Taylor suggested the circuit court create the senior investigator position.

The successful candidate, Feamster, possessed 16 years of leadership experience in law enforcement, which concluded when he joined the Pretrial Services Division. Like Taylor, Feamster holds a master's degree. And although Feamster had not worked in the Pretrial Services Division for as long as Taylor, he was very familiar with the LEIN system, having frequently utilized it in his work as a law enforcement officer. Feamster also completed classes to familiarize himself with pretrial services and to improve his leadership skills. From their interviews with the candidates, Swayze, Sabaj, and Strander all rated Feamster far superior in leadership attributes, such as vision, enthusiasm, and commitment, in comparison to Taylor who they consistently stated was ill-prepared and critical of her coworkers. Recognizing Taylor's qualifications and construing the facts in the light most favorable to her, no reasonable juror could conclude that she was the "plainly superior candidate." Instead, the evidence shows that "two reasonable decisionmakers could consider [both Taylor's and Feamster's] qualifications and arrive at opposite conclusions as to who is more qualified." *Aday*, 2022 WL 203327, at *5.

Taylor's subjective perceptions of her qualifications in relation to Feamster's is immaterial for purposes of determining the existence of pretext. *See Browning v. Dep't of Army*, 436 F.3d 692, 697–98 (6th Cir. 2006) ("Whether [the candidate] agrees with [the employer's] scoring method, or whether [s]he believes that [s]he was more qualified for the position than [the successful candidate] ultimately filled, is irrelevant to the [pretext] inquiry—what matters is [the

employer's] perception of [the unsuccessful candidate's] qualifications."); *see also Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) ("The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons."). Neither Taylor's seniority, the fact that she trained Feamster and Escobedo-Emmons, her one-month stint running the Pretrial Services office in 2015 and her brief supervisory role in Jackson County in 1993, nor her recommendation to create the senior investigator role establish that she was a "plainly superior candidate" to Feamster. These qualifications also do not demonstrate that "no reasonable employer would have chosen [Feamster] over [Taylor]." *See Provenzano*, 663 F.3d at 816 (quoting *Bartlett*, 421 F. App'x at 490–91). Hence, her qualifications standing alone do not create a triable issue for the jury.

b. "Other Probative Evidence of Discrimination"

Taylor could still meet her burden to demonstrate pretext by showing that she was "as qualified as if not better qualified than the successful applicant, *and* the record contains 'other probative evidence of discrimination.'" *Id.* at 815 (emphasis added) (quoting *Bartlett*, 421 F. App'x at 490–91). Without a showing of "other probative evidence of discrimination," however, "evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual." *Bender*, 455 F.3d at 627. Notably, when selecting a candidate for a management position, we have stated that an employer has even greater flexibility with its choice. *See Hawkins v. Memphis Light Gas & Water*, 520 F. App'x 316, 320 (6th Cir. 2013) (citing *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)). Accepting that Taylor was as qualified as or marginally better qualified than Feamster for the

senior PSI position, the record does not contain "other probative evidence of discrimination." *Bender*, 455 F.3d at 627. Nevertheless, Taylor points to three circumstances to argue otherwise: (1) the interview panel's inclusion of only white panelists in contravention to the circuit court's hiring policy; (2) Feamster's disciplinary history; and (3) the testimony of Judge Aquilina concerning the circuit court's employment practices. But those factors are insufficient to meet her burden.

### i.      Homogenous Interview Panel

Ingham County has an Equal Opportunity Employment Plan (the "Plan"), which among other things, states that the circuit court strives to provide equal opportunity in its employment on the basis of merit and fitness, regardless of race and other listed expressions and identities. Under Section H.2 of the Plan, the hiring department is responsible for assembling "[a]n interview panel consisting of a diverse group of interviewers to include, at a minimum and when reasonably practicable, one female interviewer, one male interviewer, and one minority interviewer." (R. 39-12, PageID 498). Significantly, the policy takes practical realities into account; it provides that a panel made up of individuals with these traits must be convened "when reasonably practicable." (*Id.*). Taylor's interview panel consisted of three white panelists: two women and one man. The panel did not include a minority participant. Notably, however, Chief Judge Garcia (a Hispanic) made the ultimate hiring decision.

As an initial matter, we have stated that an employer's failure to follow its own policies is insufficient to show pretext—particularly when the departure from the policy is minor. *See White*, 429 F.3d at 246. Here, the circuit court asserts that there were good reasons for the panel's makeup: Swayze and Strander both held supervisory positions over the Pretrial Services Division, and Sabaj works closely with pretrial services and was instrumental in both re-establishing the

position and generating its funding. The interview panel's lack of a minority member participant did not, standing alone, demonstrate discrimination, as the policy itself states that a minority interviewer should be included when "reasonably practicable." Such a departure from one of the aims of the circuit court's hiring policies is insufficient to meet the pretext burden. *See id.* Moreover, Taylor has not shown that it was reasonably practicable to include a minority employee on the panel. While she identifies Judge Dunnings as a minority employee who could have served as a panelist, Judge Dunnings was elected to the bench in November 2018, and Strander had assumed the court administrator role as her successor by that time. Indeed, the interviews for the senior PSI position were conducted after Judge Dunnings's election. And although Taylor states in her reply that Judge Dunnings made a final decision based on the panelist's findings, the record does not bear out this claim. Consequently, she has not established that the court, in fact, violated its own policy.

### ii. *Comparative Discipline*

Taylor also points to Feamster's disciplinary history as other evidence of Ingham County's discrimination. She insists that the social media posts for which Feamster was officially disciplined are evidence of racism and sexism. Taylor suggests that the interview panel as well as the district court downplayed Feamster's disciplinary record while weighing her record of informal discipline heavily against her. But this suggestion ignores the panel's contemporaneous analysis of the two candidates' records. First, in Swayze's memo selecting Feamster for the senior investigator role, Swayze noted that Feamster took responsibility for his actions, completed the performance tasks that were required of him, and made appropriate changes. Swayze further testified that the posts were an isolated incident that would not happen again. Second, although Taylor observes that the district court "scrutinize[ed] times where [she] was counseled, many years

ago," she fails to grapple with the circuit court's proffered evidence of a repeated pattern of quarrelsome behavior displayed while at work. (ECF 22, Appellant's Br. 14). Indeed, Swayze testified that over the course of her time as Taylor's supervisor, she once had to counsel Taylor for letting a personal matter spill out into a public hallway at a courthouse; she received phone calls from police officers complaining about Taylor; and she referred Taylor and another employee to an employee assistance program after a workplace dispute occurred. Moreover, during her interview, Taylor criticized her coworkers, substantiating complaints about her contentious work style. And even acknowledging the troublesome nature of Feamster's conduct, it occurred outside of the workplace, whereas Taylor's incidents all happened while she was either on the job or present in a courthouse within Ingham County.

Finally, how Ingham County weighed Feamster and Taylor's disciplinary histories with respect to the promotion for the senior PSI position is not for us to reassess. *See Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) ("[A]lthough the reason[] proffered by [the employer] involve[d] subjective factors, [it was] clearly sufficient to dispel the inference of discrimination and to afford [the employee] a 'full and fair opportunity' to show pretext.") (quoting *Daniels v. Board of Educ. of Ravenna City Sch. Dist.*, 805 F.2d 203, 209 (6th Cir. 1986)). Rather, "[o]ur role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." *Id.* (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)). As such, Taylor has not met her burden to show that their comparative discipline is other probative evidence of discrimination.

### iii. *Judge Aquilina's Testimony*

Finally, Taylor asserts that Judge Aquilina's deposition testimony, as well as comments Judge Aquilina gave to the press, constitute "other probative evidence of discrimination." *Bender*, 455 F.3d at 627. Judge Aquilina testified that she was not surprised that Taylor did not get the supervisory position because the circuit court "has a problem against minorities." (R. 41-10, PageID 930). Judge Aquilina further testified that she believes minorities and women at the circuit court are passed over for jobs, stating that she saw it happen to both herself and Taylor. But Judge Aquilina acknowledged that she had only a general understanding of the circuit court's hiring policies and confirmed that she was not at all involved in the interview process for the senior investigator role. Additionally, although Judge Aquilina testified that she was surprised that Feamster got the job because Taylor trained him, she also opined that Feamster would do a great job in the senior investigator role and acknowledged that he was very qualified for the position. With respect to her comments in a press article that was released in 2021, Judge Aquilina stated that she had concerns about "a qualified Black woman not being promoted." (R. 41-11). But Judge Aquilina conceded that she knew nothing of Taylor's employment file, played no part in the hiring process for the position, and was not otherwise privy to information, notes, and comments from the interviewers' scoresheets. Crucially, we have said that "[m]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 19–20 (6th Cir. 2007) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002)). Likewise, "rumors, conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Smith v. City of Toledo*, 13 F.4th 508, 519 (6th Cir. 2021) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992)); *see also Smith*,

220 F.3d at 761 (stating that "vague assertion[s] that there was a general attitude of discrimination . . . is insufficient to establish pretext"). Because Judge Aquilina's testimony does not provide evidence, direct or circumstantial, regarding discrimination pertaining to the hiring decision, her subjective beliefs are insufficient to create a question of fact concerning pretext.

Based on the foregoing, Taylor has not met her burden of establishing pretext. Taylor has not shown that she was the plainly superior candidate. And even accepting that she was as qualified if not better qualified for the position than Feamster, she has not directed us to other probative evidence of discrimination necessary to meet her burden of pretext. We next turn to Taylor's disparate impact claim.

### B. Disparate Impact/Circuit Court's Hiring Practices

Taylor also claims that Ingham County maintained a policy or practice that had a disproportionate adverse effect on African Americans. Specifically, Taylor argues that two practices: (1) the use of arbitrary and subjective scoring techniques for the interviews; and (2) the use of an all-white interview panel, in contravention to the circuit court's policy, establish a prima facie disparate impact case. Like disparate treatment claims, disparate impact claims are "evaluated under a three-part, burden-shifting framework." *Tartt v. Wilson Cnty.*, 592 F. App'x 441, 447 (6th Cir. 2014) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975)). A plaintiff must first "establish a prima facie case of discrimination—i.e., the plaintiff must establish that an adverse impact has occurred." *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 629 (6th Cir. 2008). If the plaintiff succeeds, "the employer must show that the protocol in question has 'a manifest relationship to the employment'—the so-called 'business necessity' justification." *Id.* (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971)). If the employer meets this burden, the "plaintiff must then show that other tests or selection protocols would serve the employer's

interest without creating the undesirable discriminatory effect." *Id.* (citing *Albemarle*, 422 U.S. at 425). "To establish a prima facie case of discrimination on a disparate-impact theory, a plaintiff must 1) identify a specific employment practice to be challenged and 2) prove through relevant statistical analysis that the challenged practice has an adverse impact on a protected group." *Tartt*, 592 F. App'x at 447 (citing *Dunlap*, 519 F.3d at 629). Notably, a plaintiff must "demonstrate that each particular challenged employment practice causes a disparate impact" unless the "process is incapable of separation for analysis." *Davis v. Cintas Corp.*, 717 F.3d 476, 496 (6th Cir. 2013) (quoting 42 U.S.C. § 2000e–2(k)(1)(B)(i)).

"In cases involving promotion policies, the relevant inquiry is comparing the number of protected group members benefiting from promotions with the number seeking them; this figure is then contrasted with the corresponding ratio for the non-protected group." *Phillips v. Gates*, 329 F. App'x 577, 581 (6th Cir. 2009) (quoting *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005)). "'[S]tatistics based on an applicant pool containing individuals lacking minimal qualifications for the job would be of little probative value,' however." *Id.* (quoting *Watson v. Ft. Worth Bank & Tr.*, 487 U.S. 977, 997 (1988)). "And while 'sufficiently substantial' statistical disparities raise an inference of disparate impact, the relevant analysis should not be 'framed in terms of any rigid mathematical formula.'" *Id.* (quoting *Watson*, 487 U.S. at 994–95). "In instances where the data regarding qualified or eligible applicants is incomplete or unavailable, plaintiffs may rely on other statistics, 'such as measures indicating the racial composition of otherwise-qualified applicants for at-issue jobs.'" *Grant v. Metro. Gov't of Nashville & Davidson Cnty.*, 446 F. App'x 737, 741 (6th Cir. 2011) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 651 (1989)).

Taylor cannot satisfy her initial burden with respect to either challenged practice. Beginning with Taylor's challenge to the circuit court's scoring techniques for the interviews, even accepting that the technique was arbitrary, *contra Harris v. City of Akron*, 836 F. App'x 415, 421 (6th Cir. 2020) (stating that the use of "subjective criteria is 'not illegal per se'" (quoting *Grano v. Dep't of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983)), and Taylor's characterization of the evaluation process qualifies as a specific employment practice, Taylor has not shown—through relevant statistical analysis—that this challenged practice had an adverse impact on African Americans. For support, Taylor points to the four-fifths rule set forth in 29 C.F.R. § 1607.4(D). This rule states that "[a] selection rate for any race, sex, or ethnic group which is less than four-fifths . . . of the rate for the group with the highest rate" will be "generally . . . regarded . . . as evidence of adverse impact." 29 C.F.R. § 1607.4(D). She points to hiring data from the Pretrial Services Division from 2011 through 2020, asserting that out of 94 applicants for the period (82 Caucasian, 12 African American), six Caucasians (7.3 percent) and zero African Americans (0 percent) were hired. Because 80 percent of 7.3 percent is 5.8 percent, she contends that any hiring rate for African Americans below that evidences disparate impact. But this math is flawed.

First, the sample size is too small to make this statistical evidence probative. *See Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 943 (6th Cir. 1987) (holding that a sample size of seventeen people was "suspect"); *see also EEOC v. N.Y. Times Broad. Serv., Inc.*, 542 F.2d 356, 360 (6th Cir. 1976) ("[S]tatistical evidence is of much greater value in discrimination cases where large numbers of employees are involved and fewer subjective personalized factors are considered in determining whether an offer of employment is to be made."). Taylor's evidence pertains to a

mere seven hiring decisions in the entire circuit court. Indeed, for one hiring decision included in Taylor's data set, there were no African American candidates at all.

Second, because the senior PSI position was a promotional opportunity, Taylor's data needed to focus on promotions within the circuit court. *See Phillips*, 400 F.3d at 399. Yet, as the record demonstrates, only one of the positions Taylor includes in her figures involved a promotion. The rest appear to be external opportunities, thus undermining the statistical relevancy of her data.

Taylor's second challenged practice—use of an all-white interview panel contrary to the circuit court's policy—also fails to show disparate impact. Taylor once again cannot meet the first prong of establishing a disparate impact theory. To begin, the undisputed facts appear to run counter to Taylor's assertion that there is an established practice of using all-white interview panels. *See Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002) ("Isolated and singular incidents generally are insufficient to constitute a specific employment practice."). Indeed, Taylor herself testified that she has been on hiring panels for the circuit court, including the one that recommended Feamster and Escobedo-Emmons to be hired as PSIs. And other African Americans have served on interview panels too, including then-court administrator, Judge Dunnings. Therefore, this argument is plainly undermined by the record. And even if the use of an all-white panel qualified here as a specific employment practice to be challenged, Taylor offers no relevant statistical analysis to support her argument that this challenged practice has had an adverse impact on African Americans. She offers the same hiring data from the Pretrial Services Division from 2011 through 2020. But that data only includes a sample size of seven positions, which again is too small to make the statistical evidence probative. *See Austin v. Memphis Light, Gas & Water Div.*, 129 F.3d 1263 (6th Cir. Nov. 5, 1997) (unpublished table decision) (stating that small or incomplete data sets are insufficient to establish a prima facie case).

Accordingly, Taylor has failed to establish a prima facie case of discrimination under a disparate impact theory.

## IV.

For the reasons set forth above, we affirm the district court's judgment.